## PEOPLE v. McGRAW.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. CRIMINAL LAW—EVIDENCE—CHARACTER OF DEFENDANT'S ASSOCIATES.

It was error to admit evidence that the person in company with defendant on the night of the crime, and who was jointly indicted with defendant, had been in prison, and that the families of defendant's witnesses were disreputable.

2. SAME.

It was error to allow a remark by the prosecuting attorney to the effect that the locality in which defendant lived was known by the people of the city to be "a congregation of people who had little regard for the commission of crime."

3. SAME—PREVIOUS GOOD CHARACTER.

Defendant was entitled to an instruction that, if his character up to the time of this charge had been good, the jury "should" take that in consideration in arriving at their verdict, instead of merely instructing that they "might" do so.

4. SAME—PREJUDICAL ERROR.

Error in allowing the prosecuting attorney to impress on the jury that defendant lived in a locality of criminals, that the person with whom he was jointly indicted and in whose company he was on the night of the crime was an old criminal, and that the families of defendant's witnesses were in part disreputable, and in instructing that defendant's previous good character "might" be taken into consideration, instead of charging that it "should" be considered, taken together, could not be said to be immaterial, and such errors demanded reversal.

Appeal from Herkimer county court.

John McGraw was convicted of burglary in the third degree, and of petit larceny, and from the judgment, and an order denying a motion for a new trial, he appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Josiah Perry, for appellant.
Adam J. Smith, for the People.

HISCOCK, J. Defendant was convicted under an indictment found against him and one Underwood, charging them with burglary in the third degree and grand larceny in the second degree for having broken into the barn of one Budlong in December, 1897, and taken and carried away various personal property, including some horse blankets, a harness, and some poultry. Upon conviction as above stated, the defendant was sentenced to imprisonment for the term of one year and four months. A certificate of reasonable doubt was granted by Mr. Justice Williams June 1, 1898, since

which time the defendant has been out on bail, and during which period, for some unexplained reason, nothing has been done upon the part of the district attorney to bring this appeal on for hearing.

The defendant was tried separately from Underwood, and upon his trial various lines of evidence were offered to convict him of the charge laid in the indictment. Perhaps the most important evidence was that tending to show in his possession some of the stolen property, and the sale and disposition thereof by him. The accused was sworn as a witness in his own behalf, denying the commission by him of the crime alleged, and seeking to explain his connection with the property in question, and answering the other evidence produced against him. In addition to this, quite a number of witnesses—many of them, it is true, in some manner related to or connected with the defendant—were sworn to establish his innocence by, among other things, proving an alibi for him upon the night when the crime was committed. Upon all of this evidence a question of fact was fairly presented for the determination of the jury, and we would have no disposition to reverse their verdict upon the merits. In our judgment, however, errors were committed upon the trial of the case which were prejudicial to the rights of the defendant, and which were so material that they cannot be overlooked, and for them and on account of them the conviction must be reversed.

Evidence was introduced by the district attorney showing defendant in company with Underwood, with whom he was jointly indicted, upon the night when the burglary was committed. Evidence was then introduced, over the objection and exception of the defendant, to show that Underwood had been confined in prison or the penitentiary before the commission of the offense in question here. There was no evidence that defendant had ever before been convicted of any wrongdoing. Evidence was also permitted, over like objection and exception, that Underwood kept away from home at the time when the grand jury found the indictment in question. In summing up the case, the district attorney clearly traveled outside of the record, and improperly stated:

"If the jury knew the locality in which the defendant lived as well as the people of the city of Utica knew it, they would know it was a congregation of people who had little regard for the commission of crime."

It does not appear just when this remark was made by him; but, apparently at the close of his summing up, defendant's counsel took exception to the remark, whereupon the district attorney in substance stated that he had not made the remark as quoted by defendant's counsel, and in answer to the question of the court stated that he would repeat just what he had said, and then repeated as above quoted. Upon this, defendant's counsel again took an exception to the remark as conceded to have been made, and the court replied, "You may have an exception to that."

It thus appears that, when the impropriety of this remark was called to the attention of the district attorney and of the court, the former in no way whatever modified or retracted it, but practically reasserted it, and the latter in no manner whatever ruled upon its

impropriety, or instructed the jury to disregard it, but, by expressly allowing defendant an exception, in effect sanctioned and held proper the conduct and remark of the district attorney.

Upon the cross-examination of one Jennie Stafford, an important witness for the defendant, the district attorney was allowed, despite the objection of defendant's counsel, to cross-examine her with reference to a brother and sister, with the result of drawing from her evidence from which a jury might fairly infer that the sister was leading a disreputable life. In this manner the district attorney was allowed, with the sanction and approval of the court, to impress upon the jury that this defendant lived in a locality inhabited by criminals; that upon the night when the offense in question was committed he was in the company of Underwood; that, although defendant himself had never been convicted of any prior crimes, Underwood was an old criminal, and therefore by prior history quite prepared to engage with defendant in the crime in question; that the families even of defendant's witnesses were in part bad or disreputable. In other words, the district attorney was allowed to emphasize in all of these improper ways that the surroundings and relations of defendant were bad and criminal, and such as to render it probable that he had been engaged in the commission of the crime with which he was charged. Some attempt was made upon the trial and the argument to justify some of the questions which drew out the evidence under review as put for the sake of testing the recollection of a witness, but this reply to defendant's criticisms is so transparently insufficient as not to require discussion.

At the close of the judge's charge, defendant's counsel offered this request:

"I ask your honor to charge the jury that, if they believe the defendant's character up to the time of this charge has been good, they have the right to, and should, take that into consideration in his behalf in arriving at their verdict."

This the court refused to do, saying:

"I will not say that they should. I will leave it to the jury to say. * * * The fact of his character may be considered by the jury, and the jury should take into consideration the character of the defendant and all of the witnesses in arriving at the truth in this case.

"Mr. Perry: I think the rule is as I have asked you to charge.

"The Court: I grant your request so far as to say that they have the right to do that. I will not advise them that they should. They have the right to consider the character of the defendant and of all parties."

To this refusal an exception was duly taken. In saying what he did, we think that the county judge failed to charge the jury fairly and plainly, as defendant was entitled to have him, that, if they reached the conclusion that defendant's character prior to the charge in question was good, it was their duty to take that into account in forming a determination as to his guilt. It is true that once in the course of his remarks the judge did say that the jury "should" take such evidence into account. But this seems to have been an unintentional statement by him, for both before and after it he clearly charges the jury, not that they must take into account the previous

good character of the defendant, if found, but simply that they had
the right to; making the latter rule the predominating one which
must have controlled the minds of the jury. The rule thus laid down
was clearly erroneous. One or more witnesses were sworn as to
the prior good character of the defendant. In addition to that, there
was an absence of prior conviction for wrongdoing. So that this
question was fairly presented to the jury upon the evidence, and if
the latter reached a conclusion as a question of fact in favor of de-
fendant he was entitled to have the jury instructed as requested.

Pointing out these clear errors in the conduct of the trial, the only
question left for consideration is whether they can be treated as so
immaterial as to justify the court in overlooking them and affirming
the conviction; and to this question we feel compelled to give a
negative answer. By the improper questions and remarks of the dis-
trict attorney influences were brought to bear upon the minds of the
jury which could not be otherwise than potent. We do not well
see how the jury could be more strongly led by any class of evidence
to believe that the defendant's defense was untrue, and that he was
guilty of this crime, than by being assured, with the approval of the
court, that he lived in a nest of criminally inclined people, and was,
upon the night when his conduct was under review, in association
with a criminal; and, further, we do not see how defendant could es-
cape being prejudiced with the jury when the court refused to in-
struct the latter that, even if they should find that his prior char-
acter had been good, they might, if they saw fit, disregard that fact.

The burden rests upon appellant to show that errors have been
committed, but it does not rest upon him to show that such errors
were harmful. The burden is with the respondent to show that they
were harmless, and could by no possibility have prejudiced the de-
fendant. People v. Koerner, 154 N. Y. 355, 376, 48 N. E. 730. It
is only in a most extraordinary case that an appellate court may say
that a material error could by no possibility harm the defendant, or
that such error was only technical. People v. Wood, 126 N. Y. 249,
255, 27 N. E. 362. Section 542 of the Code of Criminal Procedure,
which allows the court to disregard technical errors or defects, or
exceptions which do not affect the substantial rights of the parties,
is but little more than a codification or statutory enactment of the
previously established rule that, even in criminal cases, a new trial
will not be granted for an erroneous ruling, where the appellant tri-
bunal can see that by no possibility could the error have worked
any harm to the defendant. But this statute in no way impairs or
affects the previously well-established principle that the rejection of
competent and material evidence, or the reception of incompetent
and improper evidence, which is harmful to a defendant and ex-
cepted to, presents an error requiring reversal. Such a ruling af-
fects a substantial right of a defendant, even though the appellate
court would, with the rejected evidence before it or with the im-
proper evidence excluded, still come to the same conclusion reached
by the jury. People v. Corey, 148 N. Y. 476, 494, 42 N. E. 1066.

In People v. Maine, 166 N. Y. 50, 52, 59 N. E. 696, which was an
appeal from an order of the appellate division in the Third depart-

ment, affirming a judgment convicting defendant of the crime of manslaughter, the court of appeals reversed the decision of the appellate division on account of errors in the admission of evidence upon the trial. In doing this, through Judge Landon, the court writes as follows:

"The learned appellate division held it to be error to admit this evidence, but that it was not ground for reversal, because, 'with this evidence out, no other conclusion on the part of the jury was possible' than the guilt of the defendant. But whether it was possible or not with this evidence out was for the jury to decide, and this they have not yet done, and it is the defendant's right they should do it. * * * The evidence was material, and of a tendency prejudicial to the substantial rights of the defendant."

In People v. Smith, 162 N. Y. 520, 56 N. E. 1001, an improper statement was made by the district attorney in opening the case. Defendant's objection thereto was overruled. The conviction secured of defendant for arson was reversed, the court saying:

"The statement made by the district attorney was thus approved by the court, and may have had a prejudicial influence with the jury."

These authorities, and many others which might be cited, amply sustain the conclusion that the errors complained of in this case cannot be regarded as immaterial or harmless to defendant; and, this being so, we are led to the further conclusion that the judgment of conviction against him must be reversed, and a new trial ordered, and case remitted to county court, pursuant to section 547, Code Cr. Proc.

Judgment of conviction reversed, and a new trial granted, and case remitted to county court, pursuant to section 547, Code Cr. Proc. All concur.