# COURT OF SPECIAL SESSIONS—NEW YORK,

## April 2, 1915.

### THE PEOPLE v. FRANK J. STAHL.

PUBLIC HEALTH LAW, SEC. 153.

> The deposition before the Magistrate being superseded by the District Attorney's information it cannot be challenged by a demurrer before the Court of Special Sessions, Defendant should have moved to dismiss the information because of the insufficiency of evidence.

Before HON. FREDERIC KERNOCHAN, P. J., HON. JAMES J. McINERNEY, HON. JOHN J. FRESCHI, JJ.

APPEARANCES—Assistant District Attorney, for complainant.

*Henry C. Neuwirth,* Attorney for Defendant.

FRESCHI, J.:

The information filed on March 17th, 1915, by the District Attorney makes out a crime and properly alleges the commission of such acts as constitute a violation of the Public Health Law (Sec. 153), which prohibits the unlawful practice of medicine.

The defendant has in no wise pointed out wherein the information so filed is to be deemed insufficient; but his argument seems to be an attack upon the deposition before the Magistrate. This deposition has been superseded by the District Attorney's information. The sufficiency of a deposition before a Magistrate cannot be challenged by a demurrer before this Court. That is not the proper procedure. If the jurisdiction of the committing Magistrate is questioned, then the defendant must follow the practice laid down in the case of the

degree for having shot and killed one James Leone. That he did shoot and kill Leone is not disputed, but whether or not the shooting was criminal was a question by no means overwhelmingly answered by the evidence. A question of fact was presented for the determination of the jury, and if there were no question involved except the weight of the evidence we should find no difficulty in affirming the judgment.

There were errors committed upon the trial, however, which were certainly calculated to prejudice the jury against the defendant, and which in our opinion were such as to require a reversal and a new trial.

Both deceased and defendant bore unsavory reputations, and both had previously been convicted of minor offenses. Their friends and companions were of the same class, including nearly all the witnesses except the police officers. The assistant district attorney who prosecuted for the People, in the evident effort to " create an atmosphere " unfavorable to the defendant, undertook to produce the impression that he and the witnesses who testified in his favor belong to a " gang." In his effort to produce this unfavorable impression the prosecutor was allowed, over objection and exception, to inquire of defendant's witnesses whether they did not know certain persons in no way connected with the case, who were characterized as members of a gang, and also to ask each witness if he had not seen such persons in the corridor of the court house during the progress of the trial. In his summing up the prosecutor commented upon the supposed presence in the court house of the so-called gang in the following words: " It also appears from their testimony that they knew this James Kelly or Vaccarelli, who was down here outside of this court room, and I appeal to you gentlemen, if after the day that I brought that out and intimated that there was a gang there, if there was not an extraordinary thinning out in the corridors of these young fellows? You know whether or not you had seen a crowd of

them, and whether, after that you saw any of them. The question is this: Have they come down here to swear out the liberty of one of their pals? If you met that gang outside on a dark night, I wonder how much you would trust them. If they asked you for the loan of five dollars and said they would pay you back, would you loan them five dollars on their looks? How much would you trust them from what you know now of them?"

Upon objection by defendant's counsel to these statements and a request for appropriate instructions the court said: "The Court: I charge the jury that they are to consider only the testimony and they are not to base a verdict upon characterizations or upon conclusions of counsel on either side, and it is for the jury to draw such inferences as the testimony presents with regard to the association of the defendant and the witnesses who appeared on the stand. As for the person named as Kelly, the jurors should entirely disregard all references to that particular person."

It is to be noted that this instruction really went no further than to warn the jury to disregard evidence as to a particular person named Kelly, but inferentially, at least, implied that support for the other insinuations and declarations concerning a " gang " and its presence in the court house might be found in the evidence.

It needs no argument to show how damaging these questions and the summing up must have been to defendant before a jury which was called upon to weigh his veracity as to the circumstances of the crime of which he was accused. Nor is it arguable that it was not error to permit the prosecutor to pursue the line of cross-examination which he adopted, and to permit to pass, without proper instructions to the jury, the comments made in the course of the summing up. Such appeals to extraneous matters for the purpose of creating a prejudice against a defendant have frequently been condemned. (People v.

McGraw, 66 App. Div. 372; People v. Cascone, 185 N. Y. 317; People v. Freeman, 203 id. 267.)

While the propriety of the questions asked and the comments made are but feebly defended by the respondent, it is urged that the errors should be overlooked under section 542 of the Code of Criminal Procedure which permits an appellate court to disregard technical errors or defects or exceptions which do not affect the substantial rights of a party. This provision is a most salutary one and we have not hesitated to apply it where a proper case for its application seemed to be presented, thus ignoring and overlooking many merely technical errors. We do not consider, however, that the present is a proper case in which to apply the rule, for while the admissible evidence in the case would have justified a verdict of guilty, it would also have been consistent with a contrary verdict, and we cannot say that the improper questions and comments of the prosecutor may not have turned the balance against the defendant. The probability that it may have done so is heightened by the apparent acquiescence and approval of the trial justice. It has frequently happened that improper questions and comments by a district attorney have been overlooked because the court has not permitted the questions to be answered, and has pointedly and properly instructed the jury with respect thereto. In the present case, however, the justice not only allowed some of the objectionable questions after due objection had been made, but failed to effectually counteract, by his instructions to the jury, the effect calculated to be produced by the improper summing up. This emphasized and in effect approved the improper course adopted by the prosecutor, and made the probable effect of the questions and comments much more potent with the jury than they otherwise might have been. It is also urged upon us that these questions and comments could not have injured the defendant in the eyes of the jury because there was abundant other evidence in the case to show that he and his witnesses were of worse than doubtful

character. But who can say that this is so? He was on trial, not for the company he kept, but for a murder which he was charged with having committed. His witnesses were necessarily those with whom he associated. It is the very fact that he and they possessed unsavory reputations which made the objectionable questions and comments serious. If he and his witnesses had been people of impeccable character it would not have hurt them if the district attorney said that a gang had filled the corridors of the court house. It was because the defendant's character and associates were what they were that all this talk about a gang was calculated to be prejudicial.

As already intimated, we do not consider that the very qualified instructions given to the jury at the close of the case serve to cure the error. It is not always an easy thing for a juryman to eliminate from his memory the effect of damaging statements made in his presence (People v. Conrow, 200 N. Y. 356, 25 N. Y. Crim. 324), and, therefore, statements made to the jury outside of the relevant evidence and calculated to arouse sympathy, resentment or prejudice constitute error for which a new trial should be ordered, unless the injurious effects be counteracted by vigorous and unequivocal instructions on the part of the trial court, of which this case contains no record. It is quite as essential to the proper administration of justice that accused persons should not be convicted of crime by unfair means as it is that convicted persons should not escape through technical and unsubstantial errors which may have crept into their trial.

For these reasons we feel constrained to reverse the judgment appealed from and order a new trial.

INGRAHAM, P. J., CLARKE, DOWLING and HOTCHKISS, JJ., concurred.

Judgment reversed and new trial ordered. Order to be settled on notice.