PEOPLE v. MAESTRY. (No. 7066.)

(Supreme Court, Appellate Division, First Department. April 9, 1915.)

1. CRIMINAL LAW ☞707, 723—MISCONDUCT OF DISTRICT ATTORNEY—INSTRUCTIONS OF COURT.

The action of the court in permitting the district attorney to cross-examine witnesses for accused by asking them whether they knew certain persons in no way connected with the case, and who were characterized as members of a "gang," and whether they had not seen such persons in the corridor of the courthouse during the trial, and in permitting the district attorney in his closing argument to state that it appeared from the testimony of the witnesses of accused that they knew a third person who was outside the courtroom, and that, after it was brought out that there was a gang present, there was a thinning out of the corridors, without proper instructions on objection to the argument, was erroneous, because creating a prejudice against accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1662, 1663, 1674, 1676; Dec. Dig. ☞707, 723.]

2. CRIMINAL LAW ☞1186—MISCONDUCT OF DISTRICT ATTORNEY—INSTRUCTIONS OF COURT—"TECHNICAL ERROR."

Where the evidence justified a conviction or would have been consistent with an acquittal, error in permitting the district attorney, by cross-examination and argument, to create a prejudice against accused, without proper instructions on objection being made, was not a "technical error," within Code Cr. Proc. § 542; but the error necessitated a reversal, especially

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

where the court's instruction in effect approved the improper conduct of the district attorney.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3125–3219, 3221, 3230; Dec. Dig. ☞1186.

For other definitions, see Words and Phrases, First and Second Series, Technical Error.]

3. CRIMINAL LAW ☞730—MISCONDUCT OF DISTRICT ATTORNEY—INSTRUCTIONS OF COURT.

Statements made by the prosecuting attorney to the jury, outside of the relevant evidence and calculated to arouse prejudice against accused, constitute error for which a new trial should be ordered, where the court merely instructed to disregard the characterizations of defendant's associates by counsel and draw their own inferences.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1693; Dec. Dig. ☞730.]

Appeal from Criminal Term, New York County.

Frank Maestry, alias Frank Miller, was convicted of murder in the second degree, and he appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Samuel Wechsler, of New York City (John Palmieri, of New York City, on the brief), for appellant.

Louis Fabricant, of New York City, for the People.

SCOTT, J. The defendant has been convicted of murder in the second degree for having shot and killed one James Leone. That he did shoot and kill Leone is not disputed, but whether or not the shooting was criminal was a question by no means overwhelmingly answered by the evidence. A question of fact was presented for the determination of the jury, and if there were no question involved except the weight of the evidence we should find no difficulty in affirming the judgment. There were errors committed upon the trial, however, which were certainly calculated to prejudice the jury against the defendant, and which in our opinion were such as to require a reversal and a new trial.

Both deceased and defendant bore unsavory reputations, and both had previously been convicted of minor offenses. Their friends and companions were of the same class, including nearly all the witnesses, except the police officers. The assistant district attorney who prosecuted for the people, in the evident effort to "create an atmosphere" unfavorable to the defendant, undertook to produce the impression that he and the witnesses who testified in his favor belonged to a "gang." In his effort to produce this unfavorable impression the prosecutor was allowed, over objection and exception, to inquire of defendant's witnesses whether they did not know certain persons, in no way connected with the case, who were characterized as members of a gang, and also to ask each witness if he had not seen such persons in the corridor of the courthouse during the progress of the trial. In his sum-

☞For other cases see same topic & KEY-NUMBER in all Key.-Numbered Digests & Indexes

ming up the prosecutor commented upon the supposed presence in the courthouse of the so-called gang in the following words:

"It also appears from their testimony that they knew this James Kelly or Vaccarelli, who was down here outside of this courtroom, and I appeal to you, gentlemen, if after the day that I brought that out, and intimated that there was a gang there, if there was not an extraordinary thinning out in the corridors of these young fellows? You know whether or not you had seen a crowd of them, and whether, after that, you saw any of them. The question is this: Have they come down here to swear out the liberty of one of their pals? If you met that gang outside on a dark night, I wonder how much you would trust them. If they asked you for the loan of $5 and said they would pay you back, would you loan them $5 on their looks? How much would you trust them from what you know now of them?"

Upon objection by defendant's counsel to these statements and a request for appropriate instructions the court said:

"The Court: I charge the jury that they are to consider only the testimony, and they are not to base a verdict upon characterizations or upon conclusions of counsel on either side, and it is for the jury to draw such inferences as the testimony presents with regard to the association of the defendant and the witnesses who appeared on the stand. As for the person named as Kelly, the jurors should entirely disregard all references to that particular person."

It is to be noted that this instruction really went no further than to warn the jury to disregard evidence as to a particular person named Kelly, but inferentially, at least, implied that support for the other insinuations and declarations concerning a "gang" and its presence in the courthouse might be found in the evidence.

[1] It needs no argument to show how damaging these questions and the summing up must have been to defendant before a jury which was called upon to weigh his veracity as to the circumstances of the crime of which he was accused. Nor is it arguable that it was not error to permit the prosecutor to pursue the line of cross-examination which he adopted, and to permit to pass, without proper instructions to the jury, the comments made in the course of the summing up. Such appeals to extraneous matters for the purpose of creating a prejudice against a defendant have frequently been condemned. People v. McGraw, 66 App. Div. 372, 72 N. Y. Supp. 679; People v. Cascone, 185 N. Y. 317, 78 N. E. 287; People v. Freeman, 203 N. Y. 267, 96 N. E. 413.

[2] While the propriety of the questions asked and the comments made are but feebly defended by the respondent, it is urged that the errors should be overlooked, under section 542 of the Code of Criminal Procedure, which permits an appellate court to disregard technical errors or defects, or exceptions which do not affect the substantial rights of a party. This provision is a most salutary one, and we have not hesitated to apply it where a proper case for its application seemed to be presented, thus ignoring and overlooking many merely technical errors. We do not consider, however, that the present is a proper case in which to apply the rule, for, while the admissible evidence in the case would have justified a verdict of guilty, it would also have been consistent with a contrary verdict, and we cannot say that the improper questions and comments of the prosecutor may not have turned the

balance against the defendant. The probability that it may have done so is heightened by the apparent acquiescence and approval of the trial justice. It has frequently happened that improper questions and comments by a district attorney have been overlooked because the court has not permitted the questions to be answered, and has pointedly and properly instructed the jury with respect thereto. In the present case, however, the justice not only allowed some of the objectionable questions after due objection had been made, but failed to effectually counteract, by his instructions to the jury, the effect calculated to be produced, by the improper summing up. This emphasized and in effect approved the improper course adopted by the prosecutor, and made the probable effect of the questions and comments much more potent with the jury than they otherwise might have been.

It is also urged upon us that these questions and comments could not have injured the defendant in the eyes of the jury, because there was abundant other evidence in the case to show that he and his witnesses were of worse than doubtful character. But who can say that this is so? He was on trial, not for the company he kept, but for a murder which he was charged with having committed. His witnesses were necessarily those with whom he associated. It is the very fact that he and they possessed unsavory reputations which made the objectionable questions and comments serious. If he and his witnesses had been people of impeccable character, it would not have hurt them if the district attorney said that a gang had filled the corridors of the courthouse. It was because the defendant's character and associates were what they were that all this talk about a gang was calculated to be prejudicial.

[3] As already intimated, we do not consider that the very qualified instructions given to the jury at the close of the case served to cure the error. It is not always an easy thing for a juryman to eliminate from his memory the effect of damaging statements made in his presence (People v. Conrow, 200 N. Y. 356, 93 N. E. 943), and therefore statements made to the jury, outside of the relevant evidence, and calculated to arouse sympathy, resentment, or prejudice, constitute error for which a new trial should be ordered, unless the injurious effects be counteracted by vigorous and unequivocal instructions on the part of the trial court, of which this case contains no record. It is quite as essential to the proper administration of justice that accused persons should not be convicted of crime by unfair means as it is that convicted persons should not escape through technical and unsubstantial errors which may have crept into their trial.

For these reasons, we feel constrained to reverse the judgment appealed from and order a new trial. Settle order on notice. All concur.