## PEOPLE v. BERTLINI.

(Supreme Court, Appellate Division, Second Department.  February 28, 1916.)

1. CRIMINAL LAW ⬅1134—APPEAL—QUESTIONS REVIEWABLE.

On appeal from a conviction of robbery, the issue for the court is, not whether the defendant is guilty, but whether he was adjudged guilty after trial in substantial conformity to law.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2587, 2653, 2986–2998, 3056, 3067–3071;  Dec. Dig. ⬅1134.]

2. CRIMINAL LAW ⬅1163—EVIDENCE—INADMISSIBLE EVIDENCE—EFFECT.

The substantial rights of one accused of robbery are affected by the admission of illegal or improper testimony, unless such testimony was not prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3090–3099; Dec. Dig. ⬅1163.]

3. WITNESSES ⬅414—CORROBORATION—EVIDENCE—ADMISSIBILITY.

It was error to admit testimony of witnesses, in identifying the accused, to the effect that on a former occasion they pointed him out in court as the culprit, since such evidence merely bolstered up the identification, by showing they made the identification at another time.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1287, 1288; Dec. Dig. ⬅414.]

4. WITNESSES ⬅288—EXAMINATION—REDIRECT—ADMISSIBILITY OF TESTIMONY.

Where a conversation had at an earlier time by a witness in regard to the identity of the accused was opened up by the defense on cross-examination, it was permissible for the state on redirect to go into the conversation fully.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1003;  Dec. Dig. ⬅288.]

5. CRIMINAL LAW ⬅1163—APPEAL—HARMLESS ERROR—BURDEN OF PROOF.

Where the state claims that evidence erroneously admitted was harmless, the burden is on it to prove that it was harmless, and could not have prejudiced the defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3090–3099; Dec. Dig. ⬅1163.]

6. ROBBERY ⬅22—EVIDENCE—IDENTIFICATION—BURDEN OF PROOF.

Where one accused of robbery claimed an alibi, the burden of proving the identification by strong and cogent evidence was on the state.

[Ed. Note.—For other cases, see Robbery, Cent. Dig. § 28;  Dec. Dig. ⬅22.]

7. CRIMINAL LAW ⬅1186—APPEAL—REVERSAL—TECHNICAL ERRORS—EVIDENCE.

Admission of improper evidence as to identification of defendant *held* such error as to require reversal, in spite of Code Cr. Proc. § 542, providing that on appeal the court must give judgment without regard to technical errors, which do not affect the substantial rights of the parties.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3215–3219, 3221, 3230;  Dec. Dig. ⬅1186.]

8. CRIMINAL LAW ⬅1169—APPEAL—MATTERS REVIEWABLE.

The decision of the court on appeal from a conviction cannot be affected by the fact that it would, even with improper proof excluded, reach the conclusion reached by the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137–3143;  Dec. Dig. ⬅1169.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. ROBBERY ⬦⟳24—POSSESSION OF STOLEN GOODS—PRESUMPTION.

The mere possession by the defendant of bills of a certain denomination did not alone warrant an inference that he was guilty of having stolen those bills, which were of the same denomination as those he was charged with having stolen, although conscious, exclusive, and recent possession of stolen property, when unexplained, is conclusive.

[Ed. Note.—For other cases, see Robbery, Cent. Dig. §§ 32–36; Dec. Dig. ⬦⟳24.]

10. CRIMINAL LAW ⬦⟳308—PRESUMPTION OF INNOCENCE—WHEN INDULGED.

The presumption of innocence belongs to the defendant during the introduction of evidence, the summing up of counsel, the charge of the court, and until the jury, by its verdict, recognizes that it is overcome, or that innocence is established.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 731; Dec. Dig. ⬦⟳308.]

Appeal from Kings County Court.

William Bertlini was convicted of the crime of robbery in the first degree, and he appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Frank X. McCaffry, of Brooklyn, for appellant.

Harry G. Anderson, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

JENKS, P. J. The defendant was convicted of robbery in the first degree, whereby he took from the safe in Bossi's house in Tenth street in the borough of Brooklyn $8,700 in money and some jewelry. He and two others were indicted jointly for the crime, but he was tried separately. About 3 p. m. of January 28, 1915, Mrs. Bossi and her boy, aged 6 years, were alone in that house. The robbers gained admission by pretense to her that they (or one of their number) were inspectors, and thereafter two of them seized, gagged, and bound Mrs. Bossi—at least, attempted to place her under an anæsthetic, and bound the lad. One of them held the woman silent at the pistol's point, until, after signal from one of the others, he and they left the house. Mrs. Bossi freed herself from her bonds, found the safe broken open, and the money and jewelry missing, and thereupon gave the alarm; but the robbers had escaped. The money was made up of 50 bills of the denomination of $50, 35 bills of $100, $50 in gold, and bills of $20 and $10. Two days thereafter the defendant was arrested, in an apartment house in the borough of Manhattan, by two detectives in their quest to suppress traffic in cocaine and similar drugs. At the time of his arrest, there was found in his possession 14 bills of $50 and 23 pawn tickets. He was suspected of the robbery, because of his possession of these bills and of his unsatisfactory explanation of his acquisition thereof. Investigation led to his indictment. It was not shown that any of the bills found upon the defendant were of those stolen from the Bossis' safe, nor that the pawn tickets represented any of their jewelry.

The only direct proof that the defendant was one of the robbers was his identification by Mrs. Bossi as he who posed as an inspector,

⬦⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

who with another, seized, bound, and gagged her, and who was present when another of the robbers held her, covered by a pistol, and his identification by Miss Helen Smith, whose testimony I will discuss later, as one of the men whom she saw enter the Bossis' house and come out of it at the time of this robbery. The defendant did not testify, but he sought to prove an alibi, in that, at the time of the robbery, he was present at festivities in the borough of Manhattan, held in celebration of an infant borne by his sister. The defendant also called the manager and bookkeeper of a pawnbroker's shop in Columbus avenue, between Ninety-Ninth and One Hundredth streets, in the borough of Manhattan, who testified that on the said day of the robbery the defendant came into that pawnshop between 1 and 2 p. m.—about 1:20 p. m.—to redeem two watches, and that he then paid for the redemption a $50 bill, and that the witness at that time saw a number of similar bills in his possession.

The alibi could have been disregarded properly by the jury, either because it did not believe the witnesses, or, although it did believe that the defendant was present some time during the festivities, that such presence did not establish that he could not have participated in the robbery. The testimony of the pawnbroker's employé was supported by the pawn tickets and by the books of the shop. But, even if credited, it did not demonstrate that the defendant could not have reached the Bossis' house in time to participate in the robbery (for the proof indicates that the robbers used a motor car), but only that the defendant had a number of $50 bills in his possession prior to the robbery. The time of the attendance of the defendant in the pawnshop is not indicated by the pawn ticket, nor by the book entries, for the latter were made at the close of business from the data of the tickets received during the day.

[1, 2] It is to be borne in mind that the question before us is, not whether the defendant is guilty, but whether he was adjudged guilty after trial "in substantial conformity to law." People v. Wolf, 183 N. Y. 471, 76 N. E. 592. A substantial right of the defendant, if the proof submitted to it included illegal and improper testimony, was affected, unless we are convinced that such testimony could not have been harmful to the defendant. People v. Corey, 148 N. Y. 476-494, 42 N. E. 1066.

[3] We think that the learned court erred in the admission of evidence. We shall strive to point out the errors, and then consider whether they require a reversal of the judgment. The direct examination of Mrs. Bossi, called by the people, was confined to the story of the crime and to her then identification of the defendant. But, upon cross-examination, the defendant's counsel questioned her minutely as to an identification made by her at a Magistrate's Court in the borough of Manhattan, where she had gone under the guidance of Mr. Malcolm, a detective of the police force. The manifest purpose was to weaken the force of her testimony generally, and to show specifically that such identification was prompted, suggested, and directed by the detective. Subsequently the people called the detective to the stand, and, under objection and exception, the assistant district at-

torney was permitted to elicit the particulars of such identification, which embraced the statement that, as the defendant came into the said courtroom in Manhattan, Mrs. Bossi, as a spectator, said, "That is one of them," and that the witness said to Mrs. Bossi and to Miss Smith, "Are you sure?" and they answered, "Yes." I shall discuss this ruling later. Thereafter the people called Miss Helen Smith, a young woman 17 years old and whose testimony may be summarized, but not entirely, as follows:

At the time of the robbery she lived near the Bossis' house, and at 3 p. m. of the day thereof she stood in front of that house, as she had been walking up and down the street with two little children. She saw the defendant coming down that street with two others. The defendant spoke to her; the others went into the house. The defendant parted from them, went down the street, stood at a corner, returned, and went into that house after some one therein had answered an inquiry made by him. After a lapse of 25 minutes, she, then standing in front of the house, saw the defendant coming out of the house. She saw his face. The others came from the house within a few minutes, and thereupon the men went away. Soon Mrs. Bossi ran out of the house with her hands tied, crying, "Black Hand!"

Miss Smith was then asked whether she had gone over to the court on Fifty-Fourth street on February 5th—referring to the occasion of the alleged identification which I have mentioned heretofore. She testified that she had gone there with Mrs. Bossi and the latter's child, where they met the detective. They stood together outside of the courtroom door. She was then asked what happened, whereupon the counsel for the defendant objected to testimony as to any conversation, on the ground that it was in the absence and without the hearing of the defendant. The assistant district attorney then said that he would not ask the witness to say anything, and cautioned the witness not to tell anything that was said; but thereupon he added:

"I think it is proper, because he brought out with Mrs. Bossi what happened.

"The Court: If the other ruling is correct, it is in this case.

"By the Assistant District Attorney: Q. Now, just tell us what happened.

"Defendant's Counsel: Is it conceded on the record that this is conversation in the absence of the defendant?

"The Court: Not yet.

"The Assistant District Attorney: I asked her what happened.

"Defendant's Counsel: That involves a conversation. You have just said so, and his honor—

"The Assistant District Attorney: Something may come up before the conversation.

"Defendant's Counsel: I don't want the conversation to occur unless it is conceded— Your honor holds now that cause [because?] of some contention advanced by the district attorney that this witness is going to testify to conversations in which she, Malcolm, and Mrs. Bossi participated in the absence of the defendant?

"The Assistant District Attorney: As to the identification.

"Defendant's Counsel: I object to that line of testimony.

"The Court: If it goes beyond the conversation relating to the identification, I shall exclude it, but your objection holds good as to all the others.

"Defendant's Counsel: I object to it all.

"The Court: Now, Helen, proceed and give fully any conversation there regarding what happened. You and Mr. Malcolm and the little boy were standing in the hall. What was the next thing that happened?

"The Witness: Mr. Bertlini and another gentleman came outside of the door.

"By the Assistant District Attorney: Q. From the courtroom? A. From the courtroom, and I recognized him right away, as soon as I laid eyes on him. I looked at him a couple of minutes, and I pulled Mr. Malcolm's coat and said, 'That is one of the men,' and then we went into the courtroom for a couple of minutes, and came out again, and then I went home. Q. You recognized him as soon as he came out of the hallway as the same man you had seen coming out of Mrs. Bossi's house? A. Yes, sir. Q. Had anybody told you anything before you went over there as to how this man looked or anything? A. No, sir."

Upon cross-examination she was asked:

"Q. Of course, when you said that was the man, he was not within hearing distance? A. No; he could not hear me."

And again:

"Q. Did you ever charge this defendant personally, face to face, with participating in this crime? A. No, sir. Q. Were you ever brought right up to this defendant at any time at all, so as to be able to talk to him face to face, and tell him you saw him there? A. No, sir."

I think that the admissions of this testimony of Miss Smith as to her identification of the defendant on this occasion, and of the testimony of the detective, Malcolm, that on that occasion Miss Smith took hold of his coat and gave it a pull and said, "There is one of the men" (evidently referring to the defendant), were erroneous. These pieces of evidence were, to quote the language of Werner, J., writing for the court in People v. Jung Hing, 212 N. Y. at page 401, 106 N. E. at page 107, Ann. Cas. 1915D, 333:

"Nothing more nor less than a bolstering of the present testimony of these witnesses by showing that on a prior occasion they said or did the same thing."

The case cited contains an elaborate discussion of the principle announced in Robb v. Hackley, 23 Wend. 30, which the learned judge says is direct authority against the admissibility of the confirmatory evidence. See, too, People v. Katz, 209 N. Y. 311, 103 N. E. 305, Ann. Cas. 1915A, 501.

[4] The learned and very able assistant who argued this appeal contends that the admission of this evidence, at least so far as Mrs. Bossi is concerned, can be sustained under the exception stated in People v. Jung Hing, supra. As to her the defendant had opened the subject of her alleged identification at the Manhattan court, and it is, to say the least, arguable that the evidence as to her identification thus elicited from her on the redirect (which was essentially cross-examination), and from Malcolm, was admissible, not to prove or disprove any fact in issue, but "to corroborate or support the credibility of the witness who may be in some manner impeached." See People v. Jung Hing, supra, 212 N. Y. 401 et seq. 106 N. E. 105, Ann. Cas. 1915D, 333; People v. Katz, supra, 209 N. Y. 339 et seq. 103 N. E. 305, Ann. Cas. 1915A, 501. But these considerations have no application to the witness Miss Helen Smith.

[5-7] It remains to consider whether we can disregard these errors under even the broad powers conferred by section 542 of the Code of Criminal Procedure. The burden to show that the evidence ad-

mitted "was harmless and could by no possibility have prejudiced" the defendant "must be established by the respondent." People v. Smith, 172 N. Y. 211–243, 64 N. E. 814, and the cases cited. It must be remembered that the only direct proof that associated this defend-, ant with the robbery is the identification by Mrs. Bossi and by Miss Smith. Upon the issue of identification, the burden of proof rested upon the people, and the defendant was entitled to the benefit of any reasonable doubt. People v. Cassidy, 160 App. Div. 651, 146 N. Y. Supp. 15, and cases cited. In that case also we concluded the proof required in identification should be "strong and cogent." The jury had before it, from the testimony of Mrs. Bossi herself, that she could not remember when she was born; that she was not certain when she was married, save some 10 or 12 years ago. She testified, "My head is no longer any good," and that since that time her memory was not good, and that because of the violence she had no clear recollection of anything; that her mind acts peculiarly, just as if she had no control over it; that she did not suspect any wrong until she was seized and tied; that she never had seen the defendant before this day. She also testified that she described the defendant to the police, but that she could not recall what description she gave, nor how he was clad, save the color of his necktie. She further testified that the detective, Mr. Malcolm, told her that they had a man under arrest in New York who, it was thought, was one of the robbers; that before her visit to the Manhattan court the detective told her of the man's appearance and asked her if she would know him, and that she replied she would; that she thereafter saw the man in the hallway of the court, whereupon the detective told her it was he who had been arrested and was one of the robbers; and that after Malcolm pointed him out she then said that she recognized him.

It is proper to reiterate that the witness at this trial was positive that the defendant was the man who posed and represented himself to the witness as an inspector, and who tied her. I have thus dwelt upon her testimony to compare its relative probative force with that of Miss Smith. The record reveals Miss Smith as intelligent, composed, and fair. Her testimony was positive. Yet on cross-examination she testifies that the entry of the three men into Bossi's house had not aroused her suspicion, that she was not alarmed while the men were in the house, that there was no occasion for her to look particularly at these men, that all she did was to give them a casual look, that there was no reason why she should remember one of the men more than the others, and that at police headquarters she had said that a man named Toblitsky looked like one of the robbers, and had picked him out of a line, but that had been a mistake—that she had said Toblitsky looked like one of the robbers, but was not sure. I think that we may infer that naturally the jury would attach as much importance, and perhaps—the record warrants the surmise—more importance, to the identification by Miss Smith than to that by Mrs. Bossi.

Under such circumstances, can we conclude that the testimony as to her prior act of identification could not have had a strong, if not a decided, influence upon the jury? Was it not possible that, in discussion as to her identification of the defendant at the trial, the jury, or

some of them, otherwise in reasonable doubt, were convinced of its certainty beyond reasonable doubt by the testimony given by her and by Malcolm that she had identified the defendant on the occasion of her visit to the Magistrate's Court in Manhattan? The language of Werner, J., in People v. Jung Hing, supra, is pertinent:

"In the case at bar we have the simple case of unimpeached witnesses who were permitted, on their examinations in chief at the trial, to strengthen their testimony by showing that their previous conduct had been consistent therewith, and this we think was error (Deshon v. Merchants' Ins. Co., 11 Metc. [52 Mass.] 199; Murphy v. State, 41 Tex. Cr. R. 120, 51 S. W. 940) of such serious import that we feel bound to regard it as a sufficient ground for reversal, even though it was allowed to pass at the trial without objection or exception. These prior acts, relied upon as confirmation of the sworn testimony, had in fact no probative effect upon the credibility of the witnesses (Ellicott v. Pearl, 10 Pet. 412, 439, 9 L. Ed. 475), and yet they may have exerted a decided influence on the minds of the laymen who composed the jury."

[8] Our decision cannot be affected by the circumstance that we would, even with the improper proof excluded, reach the same conclusion as that reached by the jury. People v. Corey, supra; People v. McGraw, 66 App. Div. 372–377, 72 N. Y. Supp. 679.

[9] In view of the new trial, it may be proper to say, in consideration of a request made at this trial, that if the defendant's counsel had asked for an instruction that the mere possession of the defendant of the $50 bills taken from defendant upon his arrest did not alone warrant an inference that the defendant was guilty of the crime, it should have been given. Conscious, exclusive, and recent possession of the stolen property does warrant such an inference (People v. Friedman, 149 App. Div. 873, 134 N. Y. Supp. 153, and cases cited); and such possession, when unexplained, is taken as conclusive (People v. Jackson, 182 N. Y. 77, 74 N. E. 565). But in this record the $50 bills found upon the defendant were not identified in the remotest degree with the $50 bills, or any of them, taken by the robbers, and there is no inherent feature in a piece of circulating currency that identifies it, short of private mark or note of its number, or the like. Of course, the possession of such bills admitted of argument against the defendant; but I speak only of the probative force thereof in this record.

[10] And it may be pertinent to add that, while it is correct to instruct the jury that the presumption of innocence "belongs to the defendant during the trial," it is safer, when a jury of laymen is under instruction, to declare that such presumption continues until its verdict. To quote the words of Burr, J., in People ex rel. Gow v. Bingham, 57 Misc. Rep. at page 71, 107 N. Y. Supp. at page 1015:

"It continues during the introduction of evidence upon the trial, the summing up of counsel, the charge of the court, and until the jury, by its verdict of 'guilty,' has said that the presumption is overcome, or by its verdict of 'not guilty' that the presumption has become an established fact."

See Wharton's Criminal Ev. (10th Ed., Hilton's notes) p. 627; Underhill's Crim. Ev. § 18.

The judgment of the County Court of Kings County is reversed, and a new trial is ordered. All concur.